WO                                                                                                       MDR

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kenneth W. Reed, | No. CV 20-00758-PHX-JAT (CDB) |
| Plaintiff, | |
| v. | **ORDER** |
| State of Arizona, et al., | |
| Defendants. | |

**I.    Procedural History**

On February 26, 2020, Plaintiff Kenneth W. Reed, who is confined in the Arizona State Prison Complex-Tucson in Tucson, Arizona, filed a 102-page Amended Complaint in the Superior Court of Pima County, Arizona, against numerous Defendants, including Corizon Health, Inc. On March 20, 2020, Defendant Corizon filed a Notice of Removal and removed the case to this Court.

In a March 25, 2020 Order, Senior United States District Court Judge Raner C. Collins concluded the case was timely and properly removed, dismissed the Amended Complaint because Plaintiff had failed to file on the court-approved form, and gave Plaintiff thirty days to file a second amended complaint on the court-approved form.

On April 14, 2020, Plaintiff filed a "Motion to Correct Clerical Error: Wrong Venue," in which he stated that the case should have been transferred to the Phoenix Division of the Court because all of the transactions and events discussed in the Amended Complaint occurred at the Arizona State Prison Complex-Florence, in Florence, Arizona,

JDDL

which is in Pinal County.  In an April 20, 2020 Order, Judge Collins granted the Motion and directed the Clerk of Court to transfer this case to the Phoenix Division.  The Clerk of Court did so and assigned the case to the undersigned.  In an April 29, 2020 Order, the Court gave Plaintiff fifteen days to file a second amended complaint in compliance with the March 25, 2020 Order.

Unbeknownst to the Court, Plaintiff had been filing documents in the Tucson Division, using the case number assigned to the case in the Tucson Division, rather than the case number assigned to the case in the Phoenix Division.  In a May 8, 2020 Order, Judge Collins directed the Clerk of Court to transfer the motions pending in the Tucson Division, and any subsequently filed motions in this case, to the Phoenix Division.  The Clerk of Court did so.

In a May 19, 2020 Order, the Court addressed Plaintiff's April 27, 2020 "Amended Motion for Remand; or, in the Alternative, Amended Motions to Order Service of Notice and For Enlargement of Time to File Objection to Removal"[1] and April 29, 2020 Motion to Waive Requirement of Form, both of which had been filed initially in the Tucson Division.  The Court denied the Amended Motion for Remand and the Motion to Waive Requirement of Form and gave Plaintiff thirty days to file either (1) a motion to remand, if he believed one was appropriate, or (2) a second amended complaint on a court-approved form.

On May 18, 2020, Plaintiff filed a "Motion for Reconsideration of Court's April 29, 2020[] Order . . . or, in the Alternative, Motion for Enlargement of Time to File (Second) Amended Complaint."  On May 26, 2020, he filed a Motion for Enlargement of Time to File Reply to Defendant's Response to Plaintiff's Motion for Remand and lodged a Reply.  In a June 8, 2020 Order, the Court granted the May 26 Motion for Enlargement of Time, directed the Clerk of Court to file the lodged Reply, and denied as moot the May 18 Motion for Reconsideration.

. . . .

---

[1] Plaintiff filed his original version of the Motion on April 24, 2020.

On June 19, 2020, Plaintiff filed a "Notice of Bridled Access to the Courts Through the Mails Halting Prosecution of Cause and Motion to Stay Proceedings." He asserted that the prison paralegal had curtailed his purchase of envelopes, and this had impacted his ability to prosecute this action and his other pending cases in the state and federal courts. He requested the Court "stay these proceedings for howsoever long it might take him to obtain judicial relief to overcome this impediment."

In an August 31, 2020 Order, the Court denied Plaintiff's request for a stay, but granted him an extension of time until September 30, 2020, to comply with the May 19 Order by filing either (a) a motion to remand, if he believed one was appropriate, or (b) a second amended complaint on a court-approved form. The Court informed Plaintiff that if he was unable to comply with this deadline and sought an additional extension of time, he needed to provide the Court with information regarding his requests for legal supplies since he filed his June 19, 2020 Notice, the status of his exhaustion of his administrative remedies regarding the denial of legal envelopes, and the status of any "independent action" he filed regarding this issue.

On October 13, 2020, Plaintiff filed four informational notices, notifying the Court that the paralegal was continuing to curtail the number of legal envelopes he could purchase, his access to the courts was being diminished by the resurgence of his previously diagnosed carpal tunnel syndrome, and he would not be filing a motion for remand. He also filed a Motion for Enlargement of Time to File Status Report and a Status Report Regarding Ongoing Endeavor to Restore Access to Courts and Legal Community Through the Mails and Motion to Suspend Bespoken Dismissal Pending Hearing on Forthcoming Request for Representation ("Status Report and Motion to Suspend"). In an October 22, 2020 Order, the Court granted the Motion for Enlargement of Time, considered the Status Report and Motion to Suspend to be timely filed, and partially granted the Status Report and Motion to Suspend. The Court gave Plaintiff until November 30, 2020, to file either a second amended complaint or a request for the appointment of counsel.

. . . .

## II.     Request for Court's Assistance

On December 2, 2020, Plaintiff filed a "Request for Court's Assistance, Locating and Securing Representation for Plaintiff" (Doc. 28) and a Declaration in Support. Plaintiff requests the Court assist him in "canvassing the local legal community to locate an attorney who would be willing to represent him in this matter." (*Id*. at 1.)[2] He asserts that he is: uneducated and untrained in the law; indigent and, therefore, unable to hire an attorney, purchase legal reference materials, or pay for legal research assistance; being housed at a facility where he does not have access to a law library; and only given access to nineteen legal resources, none of which, other than an incomplete copy of *Lewis v. Casey*, 518 U.S. 343 (1996), contains any "published judicial opinions or case finding aids." (*Id*. at 3-4.)

Plaintiff contends his Amended Complaint was 102 pages long, raised 17 claims against 39 defendants, and included "everything of relevance" because he did not have access to "legal research tools and resources" and did not want to omit "one of more of those elements which are necessary *sin qua non* to stating a claim upon which relief can be granted." (*Id*. at 4.) Plaintiff claims that after the Court dismissed his Amended Complaint because it was not filed on the court-approved form and directed Plaintiff to file a second amended complaint on a court-approved form, he examined the limited legal resources available in his prison unit's "lending library," was unable to find any useful information, and requested the prison paralegal's assistance to "help with rewriting" his Amended Complaint on the court-approved form. (*Id*. at 6.) He contends his request was "summarily denied," so he "applied himself to the task" of preparing a second amended complaint. (*Id*.) Plaintiff asserts that he was limited to 21 pages, but used up the majority of the pages because he had to "continue this case's long title from its cover-page" and had to devote a dozen pages to providing the Court with information regarding the Defendants and his prior lawsuits. (*Id*. at 7.) He contends he was left with only two pages "upon which

---

[2] The citation refers to the document and page number generated by the Court's Case Management/Electronic Case Filing system.

- 4 -

to transfer the 17 counts that were pleaded in his state-court Amended Complaint," something he "found too far beyond his capability to do." (*Id*.)

Plaintiff asserts he "put himself at risk of having disciplinary charges proffered against him" and "canvass[ed] the reputed 'jailhouse lawyers'" in his unit to try to "find someone who possessed a sufficient amount of knowledge to be capable of helping him finish his [second amended complaint] and who would be willing to violate prison rules prohibiting that activity," but he was unable to do so. (*Id*.) He concluded that stating his 17 claims on two pages was "an utter impossibility" that "no one but a seasoned attorney could accomplish." (*Id*. at 8.)

Plaintiff alleges he examined the legal resources available in his unit's lending library to find information about how to apply for the appointment of counsel, but was unable to find any useful information. (*Id*.) He states he had some very old research notes regarding the appointment of counsel, but it did not contain "any elaboration as to exactly what an indigent civil litigant's burdens of proof and persuasion might be to prevail" on a motion for the appointment of counsel. (*Id*.) Plaintiff asserts that he also submitted a request for assistance from the prison paralegal, but his request was denied. (*Id*. at 8-9.) He also claims he was unable to find a jailhouse lawyer willing "to risk being punished for violating th[]e prison rules." (*Id*. at 9.) Plaintiff contends that denying him legal resources and assistance from someone trained in the law is a violation of his right of access to the courts. (*Id*.)

Plaintiff also contends there are "additional impediments" to his prosecution of this action. (*Id*.) He alleges the paralegal began "overruling Plaintiff's legal supplies requests and reducing the numbers of envelopes he would be allowed to purchase to half of what had been his wonted usages from month to month." (*Id*.) He claims his "backlog of business, that he has not been able to attend to with the courts for a want of envelopes— including the various matters that have arisen and which will continue to arise in these proceedings from time to time—has continued to grow and is now of monumental proportions." (*Id*.) Plaintiff additionally asserts that after the paralegal began reducing his

number of envelopes, he felt compelled "to notify each of the courts wherein he has a case pending of that extraordinary circumstance and requesting their proceedings be stayed." (*Id*. at 11.) He alleges this caused his carpal tunnel syndrome to "progressively worsen to reduce his dextral strength and endurance to the point of his being able to write only a few pages of final copy each day." (*Id*.) He alleges that the prison's medical provider and a therapist have told him that "his condition will worsen until he is crippled" unless he "desists completely from writing." (*Id*.) Plaintiff alleges, however, that he "will not, under any circumstances whatsoever, voluntarily abandon his prosecution of this case." (*Id*.)

Plaintiff asserts that under Ninth Circuit law, he bears the burden of showing "exceptional circumstances," which requires an evaluation of the likelihood of his success on the merits and his ability to articulate his claims pro se in light of the complexity of the legal issues involved. (*Id*. at 12.) He alleges that he does not have access to legal opinions defining what constitutes a "likelihood of success on the merits" and, therefore, "cannot learn what his burdens of proof and persuasion are" and that he does not "know or have access to the legal resources to learn against what standards the Court will be measuring his prospects for success as 'likely' or 'unlikely.'" (*Id*. at 12-13.) Plaintiff claims he has no access to legal opinions or legal resources "which might give him some insight as to what he must do" to establish he is unable to articulate his claims pro se in light of the legal issues involved. (*Id*. at 13.) He contends his case is complex because it involves 17 claims against 39 defendants, including a governmental entity, two corporate entities, and 24 fictitiously named individuals. (*Id*. at 13-14.) Plaintiff alleges, however, that he does not have "access to any of the judicial opinions which he believes accord to him the constitutional rights he claimed were violated or those which particularize the essential elements of those claims he must plead . . . to state a claim upon which relief can be granted." (*Id*. at 13.)

Plaintiff contends the Ninth Circuit's test "is a self-defeating circularity, commonly called a 'Catch-22.'" (*Id*. at 14.) He alleges that if he was able to prove he was likely able

to succeed on the merits of his claims, then he would have proven that the issues were not so complex that he could not continue litigating them on his own. (*Id*.) He asserts the Court should not limit itself to the Ninth Circuit's "inflexible test[,] which is set against insuperable and self-defeating standards," and should consider whether denying him counsel will "result in a fundamental unfairness impinging on due process protections." (*Id*. at 15.) Plaintiff contends that being denied meaningful access to the courts and his carpal tunnel syndrome, albeit not yet completely incapacitating, might constitutes "exceptional circumstances." (*Id*. at 15-16.)

### III. Discussion

There is no constitutional right to the appointment of counsel in a civil case. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 269 (9th Cir. 1982). In proceedings in forma pauperis, the court may request an attorney to represent any person unable to afford one. 28 U.S.C. § 1915(e)(1). As Plaintiff correctly notes, appointment of counsel under 28 U.S.C. § 1915(e)(1) is required only when "exceptional circumstances" are present. *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). A determination with respect to exceptional circumstances requires an evaluation of the likelihood of success on the merits as well as the ability of Plaintiff to articulate his claims pro se in light of the complexity of the legal issue involved. *Id.* "Neither of these factors is dispositive and both must be viewed together before reaching a decision." *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

Having considered both elements, it does not appear at this time that exceptional circumstances are present that would require the appointment of counsel in this case. Plaintiff has been litigating in this Court since 1994 and has been able to state claims sufficiently to proceed past the screening stage on numerous occasions. The heart of Plaintiff's problem is not that he needs an attorney to help him, that his carpal tunnel syndrome is worsening, that the paralegal is unhelpful and has begun limiting his legal envelopes, that there are limited legal resources at the prison, or that no "jailhouse lawyer" is willing to violate the prison's policies to assist him. Rather, the problem is that Plaintiff

is unwilling to winnow his 102-page Amended Complaint, which contains a 45-page "Antecedent Events of Foundational Relevance" section and a 43-page "Declaration of Claims" section, into a document that can be meaningfully reviewed by the Court so it can fulfill the congressional mandate set forth in 28 U.S.C. § 1915A.  Thus, the Court, in its discretion, will deny Plaintiff's Request.

**IV.   Leave to File a Second Amended Complaint**

The Court will give Plaintiff a **final opportunity** to file a second amended complaint on the court-approved form.  As previously explained to Plaintiff, the court-approved form complaint is six pages long and both the form complaint and accompanying instructions permit him to attach no more than fifteen additional pages, for a total of 21 pages.  In recognition of Plaintiff's lengthy litigation history and the Court's familiarity with it, the Court, in its discretion, **will not require Plaintiff to complete the "Previous Lawsuits" section (Section C) of the court-approved form**.  This will provide Plaintiff with additional pages to set forth his claims.

**V.   Warnings**

**A.   Address Changes**

Plaintiff must file and serve a notice of a change of address in accordance with Rule 83.3(d) of the Local Rules of Civil Procedure.  Plaintiff must not include a motion for other relief with a notice of change of address.  Failure to comply may result in dismissal of this action.

**B.   Possible Dismissal**

If Plaintiff fails to timely comply with every provision of this Order, including these warnings, the Court may dismiss this action without further notice.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (a district court may dismiss an action for failure to comply with any order of the Court).

**IT IS ORDERED:**

(1)   Plaintiff "Request for Court's Assistance, Locating and Securing Representation for Plaintiff" (Doc. 28) is **denied**.

(2) Plaintiff has until **January 29, 2021**, to file a second amended complaint on a court-approved form in compliance with this Order. **No further extensions will be granted**.

(3) If Plaintiff fails to file a second amended complaint in compliance with this Order **on or before January 29, 2021**, the Clerk of Court must, without further notice, enter a judgment of dismissal of this action without prejudice and deny any pending unrelated motions as moot.

Dated this 18th day of December, 2020.

James A. Teilborg
Senior United States District Judge